UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN MACKIE,

Plaintiff,

v.

NATALIE PEREZ et al.,

Defendants.

24-CV-1196-LJV
ORDER

The pro se plaintiff, Steven Mackie, has filed a complaint asserting claims under 42 U.S.C. § 1983 related to his arrest in September 2024. Docket Item 1. He also has moved to proceed in forma pauperis (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it) and has filed the required affidavit. Docket Item 2.

Because Mackie meets the statutory requirements of 28 U.S.C. § 1915(a), Docket Item 2, the Court grants his motion to proceed in forma pauperis. Therefore, under 28 U.S.C. § 1915(e)(2), the Court screens the complaint. And for the reasons that follow, some of Mackie's claims are dismissed and the rest will be dismissed unless he files an amended complaint correcting the deficiencies identified below.

## DISCUSSION

Section 1915(e)(2) "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action "at any time if the court determines that . . . the

action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2). Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (italics omitted) (quoting *Gomez*, 171 F.3d at 795)). But leave to amend pleadings may be denied when any amendment would be "futile." *Cuoco*, 222 F.3d at 112.

## I. SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a pro se complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, although a pro se complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim. *See id.* (concluding that district court properly dismissed pro se complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*). And even pro se pleadings must meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Mackie has sued numerous defendants[1] for violating his rights when he was arrested in September 2024. A liberal reading of the complaint tells the following story.

---

[1] More specifically, Mackie has sued "[t]he People of the State of New York," Assistant District Attorney Alex Eaton, Natalie Perez, National Fuel Gas Co. ("National Fuel"), and two National Fuel employees—Timothy Johnson and Kevin Schauger. *See* Docket Item 1 at 1-2. After listing National Fuel as a defendant, Mackie includes in parentheses P.C. Ackerman, *id*., apparently referring to a former CEO of National Fuel, *see Press Release: David F. Smith Elected Chairman of National Fuel Gas Company*, National Fuel Gas, https://investor.nationalfuelgas.com/news-and-events/press-releases/press-releases-details/2010/David-F-Smith-Elected-Chairman-of-National-Fuel-Gas-Company/default.aspx (identifying Ackerman as former CEO of National Fuel) (last visited Aug. 17, 2026); *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 588 n.4 (S.D.N.Y. 2015) (taking judicial notice of "press releases . . . whose accuracy cannot reasonably be questioned" (citation and internal quotation marks omitted)). Throughout this order, page numbers in docket citations refer to ECF pagination.

Additionally, Mackie does not name the judge who presided over his criminal case, but he does extensively criticize her and allege that she violated his constitutional rights. *See, e.g.*, Docket Item 1 at 5 (accusing unnamed judge of appointing an attorney in violation of Mackie's Sixth Amendment right). For that reason, along with Mackie's pro se status, the Court also construes the complaint as raising claims against that judge and, as discussed below, presumes that the judge is Buffalo City Court Judge Tiffany Perry. *See Burris v. Nassau Cnty. Dist. Att'y*, 2023 WL 6450398, at *8 (E.D.N.Y. Sep. 30, 2023) ("[I]n assessing who is a proper party to a lawsuit, courts consider the caption, pleadings, service of process[,] and other indications of the intent of the

On September 30, 2024, Mackie appeared in Traffic Court in Tonawanda, New York. Docket Item 1 at 4. When Mackie left the courtroom, he was arrested by defendant Perez, or by "Sal her [p]artner ([l]ast [n]ame unknown)," on two "warrants from National Fuel." *Id.* at 3-4. Mackie was then arraigned—apparently by Judge Tiffany Perry in Buffalo City Court[2]—later that same day. *See id.* at 4. At the arraignment, Mackie indicated that he wanted to represent himself, but Judge Perry refused to let him speak. *Id.* Mackie eventually was released on his own recognizance. *Id.*

On October 17, 2024, Mackie returned to court, where he "tried to ask" about the court's jurisdiction and the nature of the causes of action against him. *Id.* Again, Judge Perry refused to let him speak and "talked around [him] to the" prosecutor. *See id.* Even though Mackie said that he was representing himself, Judge Perry appointed M. Kreag Ferullo as his attorney and "insist[ed that] . . . Ferullo [was] going to sit in for the duration." *See id.* at 5. Mackie told Judge Perry that this was a violation of his Sixth "Amendment Right to represent [him]self." *See id.*

---

pleader." (citation and internal quotation marks omitted)). The Clerk of the Court shall add Judge Perry as a defendant.

[2] The complaint does not identify the court in which Mackie was arraigned or the judge who presided over his criminal proceedings, but the civil cover sheet Mackie submitted with the complaint, Docket Item 1 at 9, identifies two criminal cases presided over by Judge Perry as "related." Moreover, the New York State Unified Court System's official website—of which this Court can take judicial notice, *see Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023)—identifies Judge Perry as a judge on the Buffalo City Court, *see Overview: Buffalo City Court*, New York State Unified Court System, https://www.nycourts.gov/courts/8th-judicial-district/buffalo-city-court (last visited Aug. 17, 2026). The Court therefore assumes for the purposes of screening the complaint that the proceedings Mackie describes took place in Buffalo City Court before Judge Perry.

On November 26, 2024, when Mackie appeared before Judge Perry for the third time, the clerk presented him with two "more charges." *Id.* Judge Perry read the charges into the record, but "then realized she [had] schedule[d] the appointed attorney to appear" later that day. *Id.* Once again, Mackie "refused representation," but Judge Perry "insist[ed]" that Ferrullo would "be [Mackie's] counsel." *See id.*

Mackie does not provide any information about the nature or disposition of the charges against him, but he does say that "false document[s]" were signed by three "complainants under the penalty of perjury, stating they saw [Mackie] tampering and steal[ing] gas from . . . meter[s Mackie] broke." *See id.* Despite the fact that the meters supposedly were broken, the complainants somehow knew "the exact amount of gas [Mackie] stole from them." *Id.* Mackie seeks compensatory and punitive damages and apparently itemizes those damages in an attached "Schedule of Fees." *Id.* at 6-8.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Section 1983 suits may be brought against government officials in both their official and individual capacities. As the Second Circuit has explained, "[i]n an official

capacity suit, 'the real party in interest is the governmental entity and not the named official.'" *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alteration omitted) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1995)), *aff'd*, 592 U.S. 43 (2020). And to hold liable a governmental entity—or its employees in their official capacities—a plaintiff must show that the challenged action resulted from a municipal policy or custom. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "By contrast, individual capacity suits 'seek to impose individual liability upon [ ] government officer[s] for actions under color of law," *Tanvir*, 894 F.3d at 459 (alterations omitted) (quoting *Hafer*, 502 U.S. at 25), and the challenged actions need not have been the result of a policy or custom.

Mackie does not specify whether his claims are brought against the various individual defendants in their official or individual capacities. But consistent with its duty to read pro se pleadings "liberally," *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam), the Court construes the complaint as raising claims against the individual defendants in both their official and individual capacities.

### A. Official Capacity Claims

"The Eleventh Amendment precludes suits against a state unless the state expressly waives its immunity or Congress abrogates that immunity." *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (summary order) (citing *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 95 (2d Cir. 2002)). "New York has not waived its immunity for damages claims brought under [section] 1983, nor has Congress abrogated it." *Id.* (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977) and *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)). Consequently, "[t]o the extent [that a] [p]laintiff seeks money

damages against . . . The People of the State of New York . . . , those claims are barred by the Eleventh Amendment." *Roark v. New York*, 2023 WL 8827185, at *3 (N.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 125512 (N.D.N.Y. Jan. 11, 2024).

Mackie's claims against "[t]he People of the State of New York" are therefore barred by the Eleventh Amendment. And because "better pleading w[ould] not cure" that defect, those claims are dismissed without leave to amend. *See Cuoco*, 222 F.3d at 112.

The same is true for any official capacity claims against Judge Perry. "[J]udges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity." *Johnston v. Bauer*, 2023 WL 9534631, at *2 (N.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2024 WL 456786 (N.D.N.Y. Feb. 6, 2024). And city court judges are included in that system. *See* N.Y. Const. Art. 6, § 1(a) ("The unified court system for the state shall . . . include the district, town, city[,] and village courts outside the city of New York.").

And the same is true of Eaton, who Mackie says is an assistant district attorney—presumably the one who prosecuted him. *See* Docket Item 1 at 1. In New York, assistant district attorneys "act on behalf of the state, not the county in which they serve, when prosecuting a criminal matter." *See Schnitter v. City of Rochester*, 556 F. App'x 5, 9 n.4 (2d Cir. 2014) (summary order) (citing *Baez v. Hennessy*, 852 F.2d 73, 77 (2d Cir. 1988)). In other words, "if . . . an assistant district attorney acts as a prosecutor, [ ]he is an agent of the [s]tate, and therefore immune from suit in h[is] official

capacity." *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order).

Therefore, both Judge Perry and Eaton are immune from any suit for damages in their official capacities. And because any amendment would be "futile," those claims are dismissed without leave to amend. *See Cuoco*, 222 F.3d at 112.

Finally, as noted above, a municipality and its officials sued in their official capacities cannot be held liable under section 1983 unless the challenged action was taken under a municipal policy or custom. *See Monell*, 436 U.S. at 694. To state such a claim, a plaintiff must plead "three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)). "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates who violate [persons'] civil rights." *Id.* (alteration in original) (second excerpt quoting *Batista*, 702 F.2d at 397).

Mackie does not allege that any of the remaining individual defendants—some of whom do not even appear to be employees of any municipality—violated his rights due to an official custom, policy, or practice. Therefore, any claims against the remaining individual defendants in their official capacities are subject to dismissal. Nevertheless, and in light of his pro se status, *see generally Cuoco*, 222 F.3d at 112, Mackie may amend his complaint to state viable official capacity claims against the remaining individual defendants in accordance with the foregoing legal principles.

## B. Individual Capacity Claims

### a. Judge Perry

"It is well settled that judges generally have absolute immunity from suits for money damages for their official actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Judicial immunity is not simply immunity from damages, however; it is immunity from suit altogether. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This is to ensure "that a judicial officer, in exercising the authority vested in [that judge], shall be free to act upon [the judge's] own convictions, without apprehension of personal consequences." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871).

Judicial immunity therefore does not give way even to "allegations of bad faith or malice." *Mireles*, 502 U.S. at 11. Judicial "immunity is overcome in only two sets of circumstances." *Id.* "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's official capacity." *Id.* (italics omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted). "[A]cts arising out of, or related to, individual cases before a judge are considered judicial in nature." *Bliven*, 579 F.3d at 210. Moreover, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

All alleged acts by Judge Perry, even if improperly motivated or erroneous, occurred in a criminal case over which Judge Perry had jurisdiction and were taken in her judicial capacity. Accordingly, Mackie's claims against Judge Perry in her individual capacity are barred by absolute judicial immunity and are accordingly subject to dismissal. Nevertheless, in light of his pro se status, *see Cuoco*, 222 F.3d at 112,

Mackie may amend his complaint to allege specific facts establishing that Judge Perry acted outside of the broad confines of absolute judicial immunity.

**b. Eaton**

As noted above, to establish liability under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft*, 556 U.S. at 676). "The violation must be established against the . . . official directly." *Id.* In other words, liability under section 1983 may attach only upon a showing that a party was personally involved in causing the claimed injury. *See, e.g., id.*

Mackie has failed to allege the personal involvement of Eaton in any constitutional violation. Other than alleging that Eaton was an assistant district attorney, the complaint does not say anything about what Eaton did or did not do in connection with Mackie's arrest and prosecution. In fact, the complaint does not even say whether Eaton was the prosecutor who was speaking with Judge Perry when she "talked around [Mackie]"—the complaint's only reference to a prosecutor. Docket Item 1 at 4.

Mackie's section 1983 claims against Eaton in his individual capacity therefore are subject to dismissal. Nevertheless, and in light of Mackie's pro se status, *see Cuoco*, 222 F.3d at 112, he may amend the complaint to include specific facts alleging that Eaton was personally involved in some violation of his rights.[3]

---

[3] Mackie is advised that his individual capacity claims against Eaton may be barred by prosecutorial immunity, which protects prosecutors from claims arising from acts that are "closely associated with the conduct of litigation or potential litigation." *See Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from [civil] liability for

**c. National Fuel Defendants**

The claims against National Fuel, Ackerman, Johnson, and Schauger (collectively, the "National Fuel defendants") appear to be premised on their initiation of the allegedly false charges that led to Mackie's arrest and prosecution. *See* Docket Item 1 at 4-5. But Mackie does not say that these defendants were acting under color of state law in any way. And at least at this point, that is fatal to any section 1983 claims against them.

"The United States Constitution regulates only the [g]overnment, not private parties." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)). Accordingly, "a [section] 1983 claim against a private actor will usually fail because private actors do not act under the color of state law, no matter how 'discriminatory or wrongful' their conduct may be." *Alicea v. Yang*, 2023 WL 5994211, at *1 (2d Cir. Sep. 15, 2023) (summary order) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). A private party's actions can be attributed to the state only when "(1) the private party acts using the coercive power of the state or is controlled by the state . . . ; (2) the private party willfully participates in joint activity with the state, or its functions are entwined with state policies . . . ; or (3) the state has delegated a public function to the private party." *Washington v. NYC DHS*, 2025 WL 26074, at *3 (S.D.N.Y. Jan. 2, 2025) (citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

---

virtually all acts, regardless of motivation, associated with his function as an advocate."). For that reason, any amended complaint should plead facts showing why Eaton is not entitled to that immunity.

Nothing in the complaint suggests that the National Fuel defendants "us[ed] the coercive power of the state," acted jointly with any state actors, or performed a public function delegated to them by the state. Moreover, to the extent Mackie claims that any National Fuel defendant made false statements that led to his arrest, "the provision of false statements by a private actor to law enforcement personnel, standing alone, is insufficient to establish [section] 1983 liability." *Moritz v. Town of Warwick*, 2016 WL 3248494, at *3 (S.D.N.Y. June 9, 2016); *see also Young v. Suffolk County*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) ("The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of [section] 1983.").

Mackie's claims against National Fuel, Ackerman, Johnston, and Schauger are therefore subject to dismissal. But again, in light of his pro se status, *see Cuoco*, 222 F.3d at 112, Mackie may amend his complaint to allege specific facts showing that these defendants were acting under color of state law, as well as their personal involvement in any violations of his rights.

**d. Perez**

Although the allegations shed no light on Perez's role other than that she or her partner "arrested [Mackie] on [two] warrants from National Fuel," *see* Docket Item 1 at 4, the Court construes the complaint as alleging that she is a police officer who arrested Mackie without good reason.[4]

[4] It is possible that Mackie seeks to raise a state law claim for false arrest or malicious prosecution against Perez in her individual capacity. Because Mackie and all the defendants appear to be citizens of New York, Docket Item 1 at 2; *see also id.* at 4-5

A section 1983 false arrest claim "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). A plaintiff asserting such a claim must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Probable cause is "a complete defense to an action for false arrest," *Weyant*, 101 F.3d at 852 (citation and internal quotation marks omitted), and if "a plaintiff is arrested pursuant to an arrest warrant," a court "presume[s]" the existence of probable cause, *Williams v. City of New York*, 916 F. Supp. 2d 235, 241 (E.D.N.Y. 2012). A plaintiff may rebut this presumption by showing "(1) that supporting warrant affidavits on their face[] fail to demonstrate probable cause; or (2) that defendants misled a judicial officer into

---

(suggesting that Perez and Judge Perry are a police officer and judge, respectively, in New York State), and because this Court is dismissing all federal claims, it would not have jurisdiction to entertain a claim arising only under state law, *see* 28 U.S.C. § 1367(c) (a district court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction"). What is more, based on the allegations in the complaint, any claim for malicious prosecution under New York law would be subject to dismissal. Under New York law, a plaintiff alleging malicious prosecution "must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's action." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations and internal quotation marks omitted). Because Mackie does not allege the favorable termination of the proceedings against him in Buffalo City Court, he has not raised a viable claim for malicious prosecution. And any state law claim for false arrest would be subject to dismissal for the same reasons that Mackie's section 1983 claim based on false arrest is not viable. *See Weyant*, 101 F.3d at 852 ("A [s]ection 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." (citations omitted)).

finding probable cause by knowingly or recklessly including material misstatements in, or omitting material information from, the warrant affidavits." *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019) (citation and internal quotation marks omitted).

The complaint alleges that Mackie was arrested based on warrants, Docket Item 1 at 4, but it does not allege that Perez provided false information to support the arrest warrants, acted jointly with the National Fuel defendants to do so, or relied on a warrant that was invalid on its face. Mackie's section 1983 false arrest claim against Perez in her individual capacity therefore is subject to dismissal. But again in light of his pro se status, *see Cuoco*, 222 F.3d at 112, Mackie may amend the complaint to allege specific facts showing that Perez (or her partner)[5] misled a magistrate by providing false information in support of an arrest warrant, acted jointly with the National Fuel defendants to obtain warrants based on false information, or relied on facially invalid warrants.

## CONCLUSION

Because Mackie meets the statutory requirements of 28 U.S.C. § 1915(a), the Court grants his request to proceed in forma pauperis. But his claims against "[t]he People of the State of New York," along with his official capacity claims against Judge Perry and Eaton, are dismissed without leave to amend. And his remaining claims will be dismissed unless he files an amended complaint **within 45 days of the date of this**

[5] If Mackie also intends to sue Perez's partner, he should do so in any amended complaint. If Mackie does not know the full name of Perez's partner, he may identify that individual as John Doe or Jane Doe.

**order** that corrects the deficiencies noted above and otherwise complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Mackie is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that Mackie's motion to proceed in forma pauperis, Docket Item 2, is GRANTED; and it is further

ORDERED that the Clerk of the Court shall add Judge Tiffany Perry to the docket as a defendant; and it is further

ORDERED that Mackie's claims against the People of the State of New York, along with his official capacity claims against Judge Perry and Eaton, are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) without leave to amend, and the Clerk of the Court shall terminate The People of the State of New York as a defendant; and it is further

ORDERED that Mackie may amend his remaining clams as directed above **within 45 days of the date of this order**;[6] and it is further

[6] Mackie is advised that he may be eligible for help in amending his complaint from the Pro Se Assistance Program, a joint project staffed by the University at Buffalo

ORDERED that if Mackie does not file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, all remaining claims will be dismissed and the Clerk of the Court shall close this case without further order; and it is further

ORDERED that if the complaint is dismissed because Mackie fails to file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, this Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that the Clerk of the Court shall send to Mackie with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that Mackie shall notify the Court in writing if his address changes. The Court may dismiss the action if Mackie fails to do so.

---

School of Law and the Erie County Bar Association Volunteer Lawyers Project. The program can be reached by calling 716-847-0662, ext. 340, and leaving a message. Additional information is available at https://www.nywd.uscourts.gov/pro-se-assistance-program-0.

SO ORDERED.

Dated: August 17, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE